**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) TAYLOR NICHOLS;<br><br>     Plaintiff,<br><br>v.<br><br>(1) CITY OF OWASSO ex rel. OWASSO POLICE DEPARTMENT;<br>(2) VIC REGALADO, in his official capacity as Sheriff of Tulsa County;<br>(3) MATTHEW GREGORY, an Owasso Police officer;<br>(4) BAYLOR PITTINGER, an Owasso Police officer; and<br>(5) TCSO DOE, a Tulsa County sheriff's employee,<br><br>     Defendants. | Case No.: 26-cv-00486-MTS |

<u>**COMPLAINT**</u>

Plaintiff Taylor Nichols, by and through counsel, and for her causes of action against the above-named Defendants, alleges and states the following:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.      Taylor Nichols is, and was, a resident of Tulsa County, Oklahoma, at all relevant times.

2.      The Owasso Police Department ("OPD") is an agency within the City of Owasso ("City"), located in Tulsa County, Oklahoma. OPD provides law enforcement services to the City of Owasso.

3.      Vic Regalado is the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Sheriff Regalado is sued purely in his official capacity. It is well established that a claim against a county sheriff in his official capacity "is the same as bringing a suit against the

county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009); *see also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). As the elected Sheriff, Sheriff Regalado is, in essence, a governmental entity. As Sheriff, Defendant Regalado was responsible for the policies, practices, and customs of the Tulsa County Sheriff's Office ("TCSO"). Sheriff Regalado was also responsible for the screening, hiring, training, retention, supervision, discipline, counseling, and control of the TCSO's staff. TCSO manages the daily operations and staffing of the David L. Moss Criminal Justice Center, located in Tulsa, Oklahoma ("Jail").

4. Upon information and belief, Matthew Gregory is a resident of Tulsa County, Oklahoma. Officer Gregory was, at all times relevant hereto, acting under color of state law and in the scope of his employment as an employee or agent of the OPD.

5. Upon information and belief, Baylor Pittinger is a resident of Tulsa County, Oklahoma. Officer Pittinger was, at all times relevant hereto, acting under color of state law and in the scope of his employment as an employee or agent of the OPD.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth Amendment and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

7. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983.

8.      On April 6, 2026, TCSO and OPD were timely placed on notice of Ms. Nichols' tort claims in conformance with the Oklahoma Governmental Tort Claims Act, 51 OKLA. STAT. §§ 151 *et seq*.

9.      On April 13, 2026, OPD officially issued a denial of Ms. Nichols' claims, pursuant to OKLA. STAT. tit. 51, § 157; therefore, this action is timely filed against OPD.

10.     TSCO took no formal action on the Tort Claim Notice, and it was deemed denied ninety (90) days thereafter, pursuant to OKLA. STAT. tit. 51, § 157; this action is timely filed.

11.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

### INFORMATION RELATIVE TO OPD

12.     Paragraphs 1-11 are incorporated herein by reference.

13.     On the evening of December 24, 2025, Ms. Nichols was driving home when she was pulled over by Officer Gregory, allegedly for speeding.

14.     When Officer Gregory approached Ms. Nichols' vehicle, he suspected her of being intoxicated.

15.     Officer Gregory physically removed Ms. Nichols from her vehicle and threw her to the ground, when she did not immediately get out of her car.

16.     Officer Gregory and Officer Pittinger then placed Ms. Nichols under arrest, including placing her in handcuffs behind her back.

17.     During the arrest, Ms. Nichols verbalized that she was in pain due to the level of physical restraint Officer Gregory and Officer Pittinger were exerting on her.

18.     During the arrest, OPD officers, including Officer Gregory and Officer Pittinger, aggressively forced Ms. Nichols against her vehicle and OPD police vehicles.

19.     There were at least four or five OPD officers surrounding Ms. Nichols during the arrest.

20.     When Ms. Nichols' arm came out of handcuffs, Ms. Nichols was again thrown to the ground, and Officer Gregory, and possibly other OPD officers, jumped on top of her and aggressively placed Ms. Nichols in handcuffs again.

21.     Ms. Nichols was aggressively forced into an OPD vehicle and transported to OPD headquarters for booking.

22.     At some point, in either late December 24th or early December 25th, Ms. Nichols was transported to David L. Moss Correctional Center ("Jail").

23.     After getting to the Jail, an OPD officer shoved Ms. Nichols to the ground in one of the Jail's cells.

24.     Ms. Nichols is a physically petite female, with an extremely slight build, such that any "resistance" posed to an OPD officer would be minimal, at best.

25.     At all times during the arrest, Ms. Nichols appeared to be visibly intoxicated, to such an extent that any "resistance" from Ms. Nichols was not knowing and voluntary and would have been minimal and could have been corrected with basic redirection, had OPD officers chosen to do so.

26.     At the time(s) Officer Gregory deployed physical aggression and restraint, Ms. Nichols was not disobeying commands in any meaningful way.

27.     At the time(s) Officer Gregory deployed physical aggression and restraint, Ms. Nichols was not resisting any officer in any meaningful way.

28. At the time(s) Officer Gregory deployed physical aggression and restraint, Ms. Nichols was not verbally threatening any officer.

29. At the time(s) Officer Gregory deployed physical aggression and restraint, Ms. Nichols was not a threat to anyone.

30. At the time(s) Officer Gregory deployed physical aggression and restraint, Ms. Nichols was not suspected of committing any violent crime.

31. At the time(s) Officer Pittinger deployed physical aggression and restraint, Ms. Nichols was not disobeying commands in any meaningful way.

32. At the time(s) Officer Pittinger deployed physical aggression and restraint, Ms. Nichols was not actively resisting any officer in any meaningful way.

33. At the time(s) Officer Pittinger deployed physical aggression and restraint, Ms. Nichols was not verbally threatening any officer.

34. At the time(s) Officer Pittinger deployed physical aggression and restraint, Ms. Nichols was not a threat to anyone.

35. At the time(s) Officer Pittinger deployed physical aggression and restraint, Ms. Nichols was not suspected of committing any violent crime.

36. At the time an OPD officer pushed Ms. Nichols to the ground at the Jail, Ms. Nichols was not disobeying any commands.

37. At the time an OPD officer pushed Ms. Nichols to the ground at the Jail, Ms. Nichols was not actively resisting any officer.

38. At the time an OPD officer pushed Ms. Nichols to the ground at the Jail, Ms. Nichols was not verbally threatening any officer.

39.     At the time an OPD officer pushed Ms. Nichols to the ground at the Jail, Ms. Nichols was not a threat to anyone.

40.     At the time an OPD officer pushed Ms. Nichols to the ground at the Jail, Ms. Nichols was not attempting to flee.

41.     At the time an OPD officer pushed Ms. Nichols to the ground at the Jail, Ms. Nichols was not suspected of committing any violent crime.

42.     These unwarranted and egregious uses of force persisted for an elongated period of time and resulted in Ms. Nichols sustaining bodily injury(ies), as well as emotional trauma.

43.     In an effort to minimize their abuse of Ms. Nichols, OPD created a narrative, such that Ms. Nichols was originally charged with two counts of Assault and Battery Upon a Police Officer.[1]

44.     However, the video of the interaction tells a different story:



---

[1] See *State of Oklahoma v. Taylor Ashton Nichols*, CF-2025-4911, Tulsa County, Oklahoma.





45.     Upon information and belief, Officer Gregory received no punishment or discipline for his conduct towards Ms. Nichols in December of 2025.

46.     Upon information and belief, Officer Pittinger received no punishment or discipline for his conduct towards Ms. Nichols in December of 2025.

47.     Upon information and belief, no OPD officer received any punishment or discipline for conduct towards Ms. Nichols in December of 2025.

48.     On March 16, 2026, the State of Oklahoma dismissed all charges of assault and battery upon a police officer, alleged against Ms. Nichols.

49.     It is clear, based on the foregoing, that the OPD approved of and/or authorized the actions of Officer Gregory and Officer Pittinger.

50.     There is an affirmative link between the aforementioned excessive force utilized by Officer Gregory and Officer Pittinger and policies, practices and/or customs which the OPD promulgated, created, implemented and/or possessed responsibility for.

51.     On information and belief, the OPD failed to adequately train and supervise its deputies, including Officer Gregory and Officer Pittinger, with respect to, inter alia: use of force, de-escalation, the use of force continuum, use of force on a citizen, current and binding use of force case law, and use of force on individuals who are not suspected of any crime and are not resisting.

52.     In particular, the OPD failed to train its officers on the danger of applying pressure to a suspect's neck/back, while the suspect is lying prone on their stomach.[2]

53.     The Tenth Circuit has "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated [e.g., handcuffed] constitutes excessive force." *Estate of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014) (citing *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008).

54.     In *Weigel*, the Tenth Circuit established that continuing "to use pressure on a vulnerable person's upper torso while he was lying on his stomach" and "fully restrained" was an objectively unreasonable use of force." *Weigel*, 544 F.3d at 1154; *see also Wilkins v. City of Tulsa, Oklahoma*, 33 F.4th 1265, 1276 (10th Cir. 2022) (explaining that in *Weigel*, "[w]e concluded force was excessive when the officer continued to apply pressure to the suspect's back after he stopped struggling").

---

[2] "Training officers to place their knees on an arrestee's neck shows deliberate indifference to public safety." *Paul v. City of Altus*, 141 F.3d 1185 (10th Cir. 1998)

55.     The OPD failed to train its deputies on the Tenth Circuit's holdings in *Estate of Booker*, *Weigel*, and *Wilkins*, and instead permitted its officers to use pressure techniques on a suspect who is restrained on their stomach.

56.     As a result, OPD officers are left to use their best judgment as to when the use of extreme physical restraint is reasonable when detaining a suspect.

57.     And again, without guidance, OPD officers are allowed to punch, kick, or strike a suspect whenever they see fit.

58.     Moreover, upon information and belief, the OPD adopted, ratified, enforced, and maintained a policy or practice that permitted employees, like Officer Gregory and Officer Pittinger, to kneel on the upper torso of a restrained suspect.

59.     The danger associated with kneeling on a restrained suspect was well-known due to the highly publicized death of George Floyd in May 2020.[3]

60.     Despite being aware of the risks associated with kneeling on a restrained suspect, the OPD allowed, and even trained, officers to continue to utilize the maneuver.

61.     The OPD knew, must have known, or should have known that, due to the obviously inadequate training and supervision, unconstitutionally excessive use of force by OPD personnel, including Officer Gregory and Officer Pittinger, was probable, but failed to take reasonable measures to alleviate the risk of harm.

---

[3] *See*, Chris McGreal, *Detective says Chauvin knee on neck a 'totally unnecessary' use of deadly force*, The Guardian, https://www.theguardian.com/us-news/2021/apr/02/derek-chauvin-murder-trial-george-floyd-knee-neck-deadly-force

## INFORMATION RELATIVE TO TCSO

62.     After OPD transported Ms. Nichols to the Jail, TCSO took custody of Ms. Nichols.

63.     At some point when Ms. Nichols was at the Jail, she was tased by TCSO Doe.

64.     At the time she was in the Jail, Ms. Nichols had only been charged with driving under the influence, a non-violent misdemeanor.

65.     Ms. Nichols did not pose an immediate threat to the safety of any TCSO officers while at the Jail.

66.     Ms. Nichols was unable to evade arrest while at the Jail.

67.     Despite these factors, upon information and belief, TCSO Doe elected to use more than minimal force by deploying a taser on Ms. Nichols.

68.     TCSO Doe's use of force against Ms. Nichols resulted in bodily injury(ies), as well as emotional trauma.

69.     There is an affirmative link between the aforementioned excessive force utilized by TCSO officers and policies, practices and/or customs which the TCSO/Sheriff Regalado promulgated, created, implemented and/or possessed responsibility for.

70.     On information and belief, the TCSO failed to adequately train and supervise its deputies, with respect to, inter alia: use of force, de-escalation, the use of force continuum, use of force on a citizen, current and binding use of force case law, and use of force on individuals who are not suspected of a serious crime and are not resisting.

71.     The Tenth Circuit has held that the use of tasering on a pre-trial detainee must be objectively reasonable, under "totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Perea v. Baca,* 817

F.3d 1198, 1202 (10th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

72.    The TCSO failed to train its deputies on the Tenth Circuit's holdings in *Perea* and instead permitted its officers to use tasering in contravention of the *Graham* factors.

73.    Without proper guidance, TCSO officers are left to unilaterally exercise their subjectivity when deploying a taser on pre-trial detainees, such as Ms. Nichols.

74.    Moreover, upon information and belief, the TCSO adopted, ratified, enforced, and maintained a policy or practice that permitted employees to use tasers on detainees under unreasonable circumstances.

75.    Despite being aware of the risks associated with the use of tasers, the TCSO allowed, and even trained, TCSO deputies to use tasers liberally.

76.    The TCSO knew, must have known, or should have known that, due to the obviously inadequate training and supervision, unconstitutionally excessive use of force by TCSO personnel was probable, but failed to take reasonable measures to alleviate the risk of harm.

77.    Due in part to the lack of training provided to its employees, the TCSO had an unabated and long-standing policy or practice of allowing its personnel to engage in unnecessary, unreasonable, and excessive force on arrestees, particularly arrestees who are not suspected of a serious crime and who pose no threat. *See, Wilson v. Regalado, et al.,* Tulsa County District Court Case No. CV-2021-00494; *Walker v. Regalado, et al.*, United States District Court for the Northern District of Oklahoma Case No. 23-cv-0008-CV3-JFJ; *Barre v. Ramsey*, 601 F. Supp. 3d 1038 (N.D. Okla. 2022).

## CAUSES OF ACTION

### CLAIM I – Excessive Use of Force (Fourth Amendment; 42 U.S.C. §1983)
### (*Officer Gregory, Officer Pittinger, and TCSO Doe*)

78.    Paragraphs 1-77 are herein incorporated by reference.

79.    At the time of the complained events, Ms. Nichols, as a free person, had a clearly established Constitutional right under the Fourth Amendment to be secure in his person and free from objectively unreasonable seizures involving the use of excessive force.

80.    Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained-of conduct, as they were clearly established at that time.

81.    When Officer Gregory initially threw Ms. Nichols to the ground, Ms. Nichols was, at most, suspected of a nonviolent misdemeanor and posed no threat of harm to Officer Gregory or anyone else.

82.    At the time of Officer Gregory's and Officer Pittinger's use of physical force and restraint, Ms. Nichols was, at most, suspected of a nonviolent misdemeanor, was subdued, not resisting or attempting to flee in any meaningful way, and posed no threat of harm to Officer Gregory or Officer Pittinger or anyone else.

83.    At the time Officer Gregory and Officer Pittinger kneeled on Ms. Nichols' back, Ms. Nichols was, at most, suspected of a nonviolent misdemeanor, was subdued, not resisting, not attempting to flee, and posed no threat of harm to the officers or anyone else.

84.    At the time an OPD officer physically threw Ms. Nichols to the ground of a cell inside the Jail, Ms. Nichols was, at most, suspected of a nonviolent misdemeanor, was subdued, not resisting, not attempting to flee, and posed no threat of harm to the officers or anyone else.

85.    At the time TCSO Doe deployed a taser on her inside the Jail, Ms. Nichols was, at most, suspected of a nonviolent misdemeanor, was subdued, not resisting, not attempting to flee, and posed no threat of harm to the officers or anyone else.

86.    The use of violent force by Officer Gregory, under the circumstances described herein, was excessive and objectively unreasonable in violation of Ms. Nichols' Fourth Amendment rights.

87.    The use of violent force by Officer Pittinger, under the circumstances described herein, was excessive and objectively unreasonable in violation of Ms. Nichols' Fourth Amendment rights.

88.    The use of violent force by TCSO, under the circumstances described herein, was excessive and objectively unreasonable in violation of Ms. Nichols' Fourth Amendment rights.

89.    Officer Gregory failed to utilize lesser means of force to de-escalate, reasonably communicate, and/or control the situation, despite having plenty of time and opportunity to do so.

90.    Officer Pittinger failed to utilize lesser means of force to de-escalate, reasonably communicate, and/or control the situation, despite having plenty of time and opportunity to do so.

91.    TCSO Doe failed to utilize lesser means of force to de-escalate, reasonably communicate, and/or control the situation, despite having plenty of time and opportunity to do so.

92.    Even if Officer Gregory was justified in using some level of force during the encounter based on the ambiguity of the situation, the quantum of force used went far beyond that which could be considered reasonably justifiable under the circumstances.

93.    Even if Officer Pittinger was justified in using some level of force during the encounter based on the ambiguity of the situation, the quantum of force used went far beyond that which could be considered reasonably justifiable under the circumstances.

94.    Even if TCSO Doe was justified in using some level of force during the encounter based on the ambiguity of the situation, the quantum of force used went far beyond that which could be considered reasonably justifiable under the circumstances.

95.    The uses of force, as described herein, involved reckless, callous, and deliberate indifference to Ms. Nichols' federally protected rights.

96.    As a direct proximate result of Officer Gregory's, Officer Pittinger's, and TCSO Doe's unlawful conduct, Ms. Nichols suffered actual physical injuries, mental and physical pain and suffering, and other damages and losses as described herein, entitling him to recover compensatory and special damages in amounts to be determined at trial.

97.    Furthermore, Ms. Nichols is entitled to punitive damages on her claims brought pursuant to 42. U.S.C. § 1983 as the conduct, acts and omissions alleged herein constitute reckless or callous indifference to Ms. Nichols' federally protected rights.

### CLAIM II – Failure to Intervene/Failure to Protect (42 U.S.C. §1983)
### (*Officer Pittinger*)

98.    Paragraphs 1–97 are incorporated herein by reference.

99.    Officer Pittinger had an affirmative duty to prevent another law enforcement officer's use of excessive force. *See Fogarty v. Gallegos,* 523 F.3d 1147 (10th Cir. 2008); *Jones v. Norton,* 809 F.3d 564 (10th Cir. 2015).

100.    Officer Pittinger was physically present during Ms. Nichols' arrest by OPD.

101.    Officer Pittinger stood mere feet away from Officer Gregory and Ms. Nichols throughout the entire encounter and witnessed the unnecessary uses of force carried out by Officer Gregory.

102.    Based on his proximity to Ms. Nichols and Officer Gregory, Officer Pittinger had a reasonable opportunity to intervene or stop the excessive uses of force against Plaintiff.

103.    However, Officer Pittinger stood by without intervening to protect Ms. Nichols and to prevent the violations of her constitutional rights, even though he had the duty and opportunity to do so.

104.    Officer Pittinger's refusal to intervene in Officer Gregory's use of excessive force amounted to deliberate indifference to Ms. Nichols' federally protected rights, including the right to be free from the use of excessive force under the Fourth Amendment.

105.    As a direct and proximate result of Officer Pittinger's failure to intervene to prevent the violation of Ms. Nichols' constitutional rights, Ms. Nichols suffered actual physical injuries, mental and physical pain and suffering, and other damages and losses as described herein, entitling him to recover compensatory and special damages in amounts to be determined at trial.

106.    Ms. Nichols is also entitled to punitive damages on her claims brought pursuant to 42 U.S.C. § 1983 as Officer Pittinger's conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Plaintiff's federally protected rights.

### CLAIM III - Municipal/"Monell" Liability (42 U.S.C. § 1983)
### (*City and Sheriff Regalado*)

107.    Paragraphs 1-106 are incorporated herein by reference.

108.    There is an affirmative link between the aforementioned excessive force utilized by Officer Gregory and Officer Pittinger and policies, practices and/or customs of the OPD which the City promulgated, created, implemented and/or possessed responsibility for.

109.    There is an affirmative link between the aforementioned excessive force utilized by TCSO Doe and policies, practices and/or customs of the TCSO which Sheriff Regalado promulgated, created, implemented and/or possessed responsibility for.

110.    Such policies, customs and/or practices are set forth in the Petition.

111.    The City and OPD authorized, permitted, and/or encouraged the use of physical

force on a suspect's back during an arrest, while the suspect lies on their stomach.

112.    Officer Gregory's and Officer Pittinger's use of force arose under circumstances that constitute a usual and recurring situation with which OPD officers must deal: interacting with individuals suffering from diminished capacity.[4]

113.    Nevertheless, the City and OPD failed to train its employees on the use of force on such individuals.

114.    Conversely, the TSCO and Sheriff Regalado authorized, permitted, and/or encouraged the liberal use of tasers on detainees within the Jail, even when the use is unreasonable under the circumstances.

115.    TCSO Doe's use of force arose under circumstances that constitute a usual and recurring situation with which TSCO officers must deal: interacting with individuals suffering from diminished capacity.

116.    Nevertheless, the TCSO and Sheriff Regalado failed to train their employees on the use of force on such individuals.

117.    The violation of Ms. Nichols' Fourth Amendment rights was a highly predictable and/or a plainly obvious consequence of both the City's and Sheriff Regalado's policies, practices and/or customs.

118.    The City and Sheriff Regalado knew, must have known, or should have known that -- due to its obviously inadequate training, supervision and discipline -- unconstitutional conduct

---

[4] *Nelson v. City of Wichita, Kansas*, 217 F. Supp. 2d 1179, 1184 (D. Kan. 2002) (dealing with a suspect who "was allegedly intoxicated and had both hands handcuffed behind her back" was a usual and recurring situation for police officers); *Bowen-Soto v. City of Liberal, Kan.,* No. CIV.A. 08-1171-MLB, 2010 WL 4643350, at *5 (D. Kan. Nov. 9, 2010) ("It was also foreseeable that defendant's officers would encounter a person suffering from intoxication and/or who was combative and uncooperative.").

toward arrestees/detainees by their respective personnel was probable and almost certain, but failed to take reasonable measures to alleviate the risks of harm.

119. Thus, the City and Sheriff Regalado have created, tolerated, and maintained long-standing, unconstitutional department-wide customs, law enforcement-related policies, procedures, and practices, and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to uses of excessive force.

120. The deliberately indifferent training and supervision provided by the City and Sheriff Regalado resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available and were also moving forces behind the violation of Ms. Nichols' civil rights and the resulting injuries alleged herein.

121. As a direct result of the City's and Sheriff Regalado's unlawful conduct, Ms. Nichols has suffered serious actual physical and emotional injuries and other damages and losses as described herein, in amounts to be determined at trial.

**WHERFORE,** based on the foregoing, Ms. Nichols prays this Court grant her the relief sought, including but not limited to actual and punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorney's fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ *Donald E. Smolen, II*
Donald E. Smolen, II, OBA #19944
Christopher U. Brecht, OBA #22500
611 S. Detroit Ave.
Tulsa, OK  74120
Tel:  918-777-4529
Fax:  918-890-4529
www.smolen.law
don@smolen.law
chrisbrecht@smolen.law
*Attorneys for Plaintiff*